UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL NUMISMATIC CERTIFICATION, LLC
Florida Limited Liability Company, ASA
ACCUGRADE, INC., a Florida corporation,
TREASURE GALLERY, INC., a Florida corporation,
and CENTSLES, INC., a Florida corporation,

        Plaintiffs,        CASE NO.: 6:08-cv-00042-PCF-GJK

vs.

EBAY, INC., a foreign corporation,
AMERICAN NUMISMATIC ASSOCIATION, a
foreign non-profit association, and PROFESSIONAL
NUMISMATISTS GUILD, INC., a foreign corporation,

        Defendants.
_____/

**MEMORANDUM IN OPPOSITION TO DEFENDANT ANA'S FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

COME NOW the Plaintiffs, NATIONAL NUMISMATIC CERTIFICATION, LLC, a Florida Limited Liability Company ("NNC"), ASA ACCUGRADE, INC., a Florida corporation ("ACG"), TREASURE GALLERY, INC., a Florida corporation ("TREASURE GALLERY"), and CENTSLES, INC., a Florida corporation ("CENTSLES"), by and through their undersigned attorneys, and hereby files this Memorandum in Opposition to Defendant AMERICAN NUMISMATIC ASSOCIATION'S ("ANA") Fed.R.Civ.P 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint and state:

    **I.**    **INTRODUCTION**

This is an action for trade libel, conspiracy to commit trade libel, and for

Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Plaintiffs seek damages, including attorney's fees under FDUTPA, and injunctive relief against the Defendants.

The ANA has moved to dismiss Plaintiffs' First Amended Complaint pursuant to Fed.R.Civ.P 12(b)(6) on the purported grounds that Plaintiffs have failed to state a claim upon which relief can be granted. For each of the reasons set forth below, Plaintiffs respectfully submit that the Court should enter its Order denying the ANA's motion to dismiss in its entirety.

**II.    STANDARD FOR FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS**

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), this Court must confine its analysis to the allegations as stated in the complaint. The Court must accept the well-plead allegations as true and resolve all factual issues in favor of the non-moving party. *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994); *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993). The threshold of sufficiency that a complaint must meet is exceedingly low.  Accordingly, a claim may be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief can be granted under any facts consistent with the allegations.  *Conley v. Gibson,* 355 U.S. 41, 44-45 (1957).

In order to state a claim upon which relief may be granted, Fed.R.Civ.P. 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Burch v. Appalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 798 (11th Cir. 1988).  The court must take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the plaintiff. *Id.*  The accepted rule for appraising the sufficiency of a complaint is that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *S.E.C. v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hospital Corp. of Am.,* 795 F.2d 948, 953 (11th Cir. 1986).

### III. THE AMENDED COMPLAINT SUFICIENTLY PLEADS CLAIMS FOR CIVIL CONSPIRACY, TRADE LIBEL AND VIOLATION OF FDUTPA

The ANA asserts that none of the causes of action alleged by Plaintiffs in the Amended Complaint state a claim against it upon which relief can properly be granted. Plaintiffs have addressed each of the ANA's arguments below in the order they are made in the motion to dismiss under consideration by the Court.

#### A. Civil Conspiracy Claim

Count I of the Amended Complaint sufficiently alleges a claim against ANA and the other Defendants for civil conspiracy to commit trade libel.

The essential elements of a civil conspiracy are: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993) (citing *Kent v. Kent*, 431 So. 2d 279, 281 (Fla. 5th DCA 1983) (finding that complaint stated a claim for civil conspiracy). Such a tort is actionable where the plaintiff can show some particular power of coercion possessed by conspirators that an individual acting alone would not have. *Id.* (*citing Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 2d DCA 1982)). An actionable conspiracy "requires

3

an actionable tort or wrong." *Id.* (citing *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984))

As set forth in section III.B. below, the Amended Complaint sufficiently alleges a trade libel claim against the ANA. Notwithstanding the fact that the object of the conspiracy had been adequately plead in Count Two of the Amended Complaint, the ANA contends that the conspiracy claim lacks specificity and particularity and that Plaintiffs have failed to "allege sufficient ultimate facts to establish that…the ANA did an unlawful act or a lawful act by unlawful means." (*See* Doc. 44 at pp. 14 and 15). Plaintiffs respectfully submit that the Court should reject the ANA's arguments in this regard and determine that Plaintiffs have sufficiently plead a civil conspiracy to commit trade libel claim against the ANA and the other Defendants.

The gravamen of the conspiracy claim as it relates to the ANA is set forth in paragraphs 14-19 and 23-25 of the Amended Complaint. These allegations specifically and with particularity accuse the ANA of collaborating with the other named Defendants to form a "watch group" to combat misrepresented eBay coin listings (¶¶ 13 and 14), spearheading a coin grading survey intended to elicit deceptive and misleading results pertaining to ACG's grading services (¶ 17), utilizing and publishing the deceptive and misleading survey results to defame ACG (¶¶ 17 and 18), announcing and promulgating the new policy on eBay that unlawfully excludes coins graded by NNC and ACG from being listed as certified (and in fact refers to them as "counterfeit") and that unlawfully prohibits TREASURE GALLERY and CENTSLES from selling coins graded by NNC and ACG except as "raw" coins at a greatly diminished price. (¶¶ 19-22). Moreover, the Amended Complaint specifically alleges that the ANA unlawfully accused the Plaintiffs

4

of fraud by implication in a press release that it published announcing the new policy enacted by eBay at its recommendation and with its assistance and cooperation. (¶ 23). Finally, Plaintiffs sufficiently allege the requisite financial injury flowing from the Defendants' unlawful conduct. (¶ 36)

The allegations contained in Count One sufficiently address each of the elements of a civil conspiracy claim and contain the necessary particularity as it relates to the ANA's role in the conspiracy and activities in furtherance thereof. *See Primerica Financial Services v. Mitchell*, 48 F.Supp.2d 1363 (S.D. Fla. 1999) (Where plaintiff named the alleged co-conspirators, alleged certain acts performed by the defendant and co-conspirators in furtherance of the conspiracy, plead that the intent of the conspiracy was to interfere illegally with plaintiff's business relationships and that the plaintiff suffered financial injury, the court found the pleading sufficient to put the defendant on notice as to the nature of the alleged conspiracy and denied the motion to dismiss.); *See also Dozier & Gay Paint Co., Inc.*, *v. Dilley*, 518 So.2d 946, 948 (Fla. 1st DCA 1988) (A civil conspiracy may be established solely through circumstantial evidence).

The ANA argues that Plaintiffs have "jumbled" Defendants and used "key words" rather than providing a factual basis for the legal conclusion that a conspiracy existed. This is simply not true. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations omitted). Rather, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Id.* at 1965. "The Court has instructed us that the rule . . . 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Watts v. Fla. Nat'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (*quoting Bell Atlantic Corp.,* 127 S. Ct. at 1965). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1965)

The Amended Complaint adequately details the conspiracy to undertake unlawful acts engaged by the Defendants separately and together. Moreover, it clearly alleges the nature of the damages caused to Plaintiffs as a result of the conspiratorial conduct. Accordingly, this Court should deny the ANA's motion to dismiss.

**B.  Trade Libel**

Count II of the Amended Complaint properly pleads a cause of action for trade libel against the ANA. Defendant ANA argues that 1) Plaintiffs' allegations are contradicted by the exhibits, 2) Plaintiffs' damages only concern business reputation and not the Plaintiff's goods and/or business character, and 3) Plaintiffs have failed to denote which of ANA's remarks were defamatory and "of and concerning" the Plaintiffs.

***1.   Plaintiffs' exhibits do not contradict the language in the Amended Complaint***

Defendant ANA seems to propose that because Plaintiffs' Amended Complaint

uses the word "opinion" in ¶ 17 when discussing the survey of coin grading companies (Exhibit "C"), Plaintiffs are now forbidden to allege that ANA's statements in its press release (Exhibit "M") constitute trade libel. Such a proposition ignores relevant Florida law, which is the appropriate law to follow in this case. *See Lanchile Airlines v. Connecticut General Life Ins. Co.*, 731 F. Supp. 477, 478-479 (S.D. Fla. 1990) (stating that Florida state law is appropriate for a defamation claim based on diversity of citizenship when the defamatory comments were published in Florida and/or Florida had the "most significant relationship" to the defamation).

A group of torts recognized under the collective title of injurious falsehood include the cause of action for trade libel. *Salit v. Ruden*, 742 So.2d 381, 386 (Fla. 4th DCA 1999). The gist of trade libel is the "intentional interference with another's economic relations." *Id.* One who publishes a false statement of fact or a mixed expression of opinion harmful to the interests of another is liable for the pecuniary loss caused by such publication if he knows or should know that it will result in a loss of business or something of value and he knows that the statement published is false or acts with reckless disregard as to its truth or falsity. *Id. citing W. Page Keeton, et al.*, *Prosser and Keeton on The Law of Torts* § 128 at 970 (5th ed. 1984).

The ANA's statements in its press release are statements of fact or mixed expressions of opinion and such statements are actionable under Florida law. *See Barnes v. Horan*, 841 So. 2d 472 (Fla. 3rd DCA 2002); *Morse v. Ripken*, 707 So. 2d 921 (Fla. 4th DCA 1998) (stating that mixed expressions of opinion are not constitutionally protected). Statements are considered mixed expressions of opinion when "an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that

have not been stated in the article or assumed to exist by the parties to the communication." *Id* at 476-77 (citing *Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923 (Fla. 3rd DCA 1983). In the *Barnes* case, the Third District Court of Appeal explained that defendant's statement that "not one person in my firm could, or would trust [the plaintiff] to tell the truth" amounted to actionable mixed opinion because the statement does more than express the author's opinion. Rather, the statement "implies to the reader that David Horan, through his relationships with the people in his firm, has acquired knowledge of the fact that the plaintiff's former co-workers thought he was a liar who could not be trusted." *Barnes* at 477.

The *Barnes* case is analogous to the instant case because the ANA's press release implies some acquired knowledge (apart from the grading survey) that puts it in a position to know who sells counterfeit coins and who does not. The press release states that "[t]he ANA has worked with eBay since September 2004, and through the Coins Community Watch group has assisted eBay in identifying misrepresented or fraudulent listings…" *See* Exhibit "M." The press release also states that it was "after much deliberation" that the ANA recommended only going forward with the coin policy if the survey would be used. *Id*. Again, this implies that the ANA has insider information – either via its deliberations or relationship with eBay – that anyone not rated favorably on the survey is either a fraudulent dealer or misrepresents their coins.

As shown above, the ANA's defamatory statements are contained in the press release. This case involves civil conspiracy and deceptive and unfair trade practices, and, as shown in Section III. A. above, the so-called survey is a component in those claims. To suggest that the survey, purportedly based on opinion, somehow negates

8

the ANA's defamatory statements of mixed opinion is preposterous. At no point in Plaintiffs' Amended Complaint do they allege that the survey (Exhibit "C") contained the ANA's defamatory statements. The ANA recognizes as much in the final paragraph of page 5 in its Motion to Dismiss when it states that the ANA published the press release to third parties and that the press release contained the ANA's own statements. *See* Doc. 44 pp. 5,6.

### 2. Plaintiffs have properly plead damage to their business reputations, as required under Florida law

Plaintiff's Amended Complaint properly alleges that the Plaintiffs' business reputations have been harmed by the ANA's defamatory statements. *See Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377, 380 (5th Cir.1967) (stating that it is "well settled" in Florida that the business reputation of a corporation may be injured by written or oral defamatory matter "which tends to prejudice it in the conduct of its trade or business, or to deter third persons from dealing with it."); *Kilgore Ace Hardware, Inc. v. Newsome*, 352 So. 2d 918, 920 (Fla. 2nd DCA 1977) ("With respect to the *trade libel* or slander count, it is now well recognized that a person, and a corporation as well, may recover damages for injuries suffered because of written or oral publication of false *defamatory matter which tends to be prejudicial in the conduct of a trade or business* or to *deter third persons from dealing in business with him*.) (emphasis added). This is exactly the type of damage being experienced by Plaintiffs. The ANA's statements at issue are that Plaintiffs are taking the opportunity to commit fraud and dealing in counterfeit coins such that the world's largest Internet auction site (at the recommendation and with the assistance of the ANA) has enacted a policy "decertifying" NNC and ACG and prohibiting TREASURE GALLERY and CENTSLES

9

from listing ACG and NNC graded coins as certified coins. The harm from such statements cannot be overstated. Plaintiffs' allegations establish that as the result of the ANA's libelous statements that Plaintiffs have availed themselves of the opportunity to commit fraud, NNC, ACG, TREASURE GALLERY and CENTSLES have been branded as counterfeiters not worthy to list their graded coins on eBay, and coins graded by NNC and ACG have been rendered nearly worthless. *See* Exhibits "K," "M," First Amended Complaint ¶¶ 22-25. It is hard, if not impossible, to think of a more prejudicial situation for a business to endure – one in which third persons have begun to distrust and question the legitimacy and quality of the Plaintiffs' businesses and goods. *See* Exhibit "K."

Even under the ANA's "heightened" test for trade libel, Plaintiffs have sufficiently alleged that the libelous statements by ANA have caused the requisite damage. The ANA cites case law from California and New York to suggest that this Court must look at whether the defamatory statements damage Plaintiffs' vendibility of goods or otherwise implicate the Plaintiffs' goods themselves. *See* Doc. 44, p. 7. While this is not the proper test in this Court, the ANA's statements obviously damage the vendibility of Plaintiffs' coins and implicate the authenticity and worth of Plaintiffs' goods. That is the entire premise of this case, and Plaintiffs properly plead the damage they continue to suffer due to the defamatory statements and unfair conduct of Defendant ANA. *See Leavitt v. Cole,* 291 F.Supp.2d 1338 (M.D. Fla. 2003)(to the extent that it remains necessary in a trade libel action to plead "special damages" in light of Fed.R.Civ.P. 8(a), allegations explaining the nature of the damages incurred by the claimant suffice at the pleading stage).

### 3. The ANA's statements in the press release were "of and concerning" the Plaintiffs.

The ANA suggests that Plaintiffs have not shown that its statements in the press release were of and concerning the Plaintiffs and, therefore, Plaintiffs must be attempting a "group defamation" claim. *See* Doc. 44 pp. 11-13. This creative assertion fails to consider the reality of the facts in this case. The ANA's own Motion to Dismiss admits that ¶24 of Plaintiffs' Amended Complaint properly pleads that the ANA's statements were "of and concerning" Plaintiffs NNC, and ACG. *See* Doc. 44, p.12.,n. 1. The ANA overlooks the preceding paragraph in which Plaintiffs stated that the ANA's statements are "necessarily understood to refer to the Plaintiffs and permit the reasonable inference that individuals and entities that offer for sale on eBay coins graded by Plaintiffs NNC and ACG, most notably TREASURE GALLERY and CENTSLES, have availed themselves of the "opportunity" to commit consumer fraud and are dealing in counterfeit coins." *See* First Amended Complaint at ¶ 23. Plaintiffs submit that the phrase "necessarily understood to refer to the Plaintiffs" clearly means that the statements were "of and concerning" the Plaintiffs. Regardless of whether this is a group defamation issue or not, Plaintiffs have properly plead that ANA's statements were of and concerning (or "refer[ing] to") the Plaintiffs.

Assuming *arguendo* that the test for group defamation is appropriate concerning the ANA's defamatory statements, the statements at issue permits a reasonable person to ascertain that the Plaintiffs are the target of ANA's statements. *See Barger v. Playboy Enterprises*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983). The group in this case is easily ascertained – eBay coin sellers listing certified coins which are not one of the

four ANA-blessed companies. This is not a case where a few people from a large class are claiming defamation and the rest of that class may or may not be the subject of the defamatory statements. For example, in *Neiman-Marcus v. Lait*, a small group of women out of 382 women making up a class of Neiman-Marcus employees sued for defamation when a book suggested that, as a whole, Neiman-Marcus saleswomen were prostitutes. 13 F.R.D. 311 (S.D.N.Y. 1952). The suit was improper because it would be impossible for the public to determine which of the 382 were being called prostitutes – it could be only those bringing the suit, or it could be any additional non-party saleswomen. Here, it is reasonable to conclude who is being equated to counterfeiters inasmuch as ACG and NNC, and those individuals and entities who had traditionally listed ACG and NNC graded coins on eBay, including TREASURE GALLERY and CENTSLES, were clearly the target of the new eBay "policy" and the ANA's libelous statements regarding the basis for the "policy" because they had been involved in a large volume of coin listings and sales made via eBay for a number of years. (*See* First Amended Complaint at ¶ 28) Moreover, and perhaps more importantly, the Amended Complaint clearly alleges, at least with respect to ACG, that the ANA had targeted its online business practices since the advent of the ANA/eBay Coins Community Watch Group in 2004. (*See* Amended Complaint at ¶¶ 13-16).

When, as here, a jury may reasonably interpret statements to be of and concerning the Plaintiffs, dismissal is not appropriate. *See La Luna Enterprises, Inc. v. CBS Corp.*, 74 F.Supp.2d 384, 391 (S.D.N.Y.1999) (applying Florida law and stating that "any doubt as to the defamatory effect of [a] publication should be resolved by the common mind of the jury, and not even by the most carefully considered judicial

pronouncement") (citing *Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1286 (5th Cir [Fla.] Mar. 1981). This is consistent with the Restatement (Second) of Torts section on group defamation which states that liability may be proper when "the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *See* Rest. 2d. Torts § 564A; *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 804-805 (Fla. 1st DCA 1997) (citing § 564A).

### B.   Florida Deceptive and Unfair Trade Practices Act

The ANA claims in its Motion to Dismiss that Plaintiffs have failed to state a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") because: (1) Plaintiffs have not alleged that the ANA engaged in trade or commerce; (2) Defendants are not in a consumer-transaction relationship and the conduct alleged is not "market based" conduct to which the FDUTPA is directed; and (3) Plaintiffs cannot seek injunctive relief as well as actual damages plus attorney's fees and court costs.

#### *1.   Defendant is engaged in trade or commerce*

First, Plaintiffs have in fact alleged that the ANA is engaged in trade or commerce. Paragraph 51 of Plaintiffs' First Amended Complaint states in pertinent part that "Defendant has engaged and continues to engage in unfair and deceptive trade practices in the conduct of *trade* or business as described in paragraphs 17-21 and 23-29 above…". Moreover, in paragraph 6 of Plaintiffs' First Amended Complaint Plaintiffs allege that the ANA is a "federally chartered not-for-profit Internal Revenue Code §501(c)(3) entity that acts as the preeminent trade association in the numismatic hobby and the multi-billion dollar industry associated with the numismatic hobby."

Trade or commerce is defined in the FDUTPA statute as the "advertising, soliciting, providing, offering, or distributing, whether by sale, rental or otherwise of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Hinson Electrical Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.,* 2008 U.S. Dist. LEXIS 9464, *9 (M.D. Fla. 2008) (citing Fla. Stat. §501.203(8)(2007)). The ANA is involved in the offering of, and globally known as an educator of, the numismatic hobby. The ANA is also known as a steward of the most comprehensive numismatic exhibits and has the most accessible numismatic research library. The ANA advertises itself as, and offers its services as, an educator of the numismatic hobby to customers throughout commerce. This clearly fits within Congress' definition of trade or commerce. *Id.* The ANA's acts occurred in the course of trade or commerce when it published the false and damaging results of the survey on its website (First Amended Complaint at ¶17), conspired with eBay and PNG to create a new policy on eBay whereby Plaintiffs NNC and ACG-graded coins cannot be listed as "certified" and are deemed "counterfeit" (First Amended Complaint at ¶19), and announced the survey in a press release inferring that coins graded by NNC and ACG, which are for sale by TREASURE GALLERY and CENTSLES are counterfeit and Plaintiffs have availed themselves of the "opportunity to commit consumer fraud" (First Amended Complaint at ¶ 23). Therefore, the ANA's Motion to Dismiss for failure to state a claim under FDUPTA based on Plaintiffs' alleged failure to assert that Defendant was involved in trade or commerce should be denied.

### 2. *FDUTPA does not require a consumer-transaction*

The ANA next alleges that because the Plaintiffs and Defendant are not in a

consumer transaction relationship and the conduct alleged in ¶17-21 and ¶¶ 23-29 of the First Amended Complaint is not the type of "market based" conduct to which FDUTPA is directed, Plaintiffs have failed to state a cause of action under FDUTPA. Contrary to Defendant's assertions, FDUTPA does not require a consumer transaction.

FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. *Furmanite America, Inc. v. Williamson, Inc.,* 506 F. Supp. 2d 1134, 1145 (M.D. Fla. 2007) (citing §501.204(1)). The Florida Supreme Court has recently held that the statute applies to "private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract." *PNR, Inc. v. Beacon Prop. Mgt. Inc.,* 842 So.2d 773, 777 (Fla. 2003). Prior to July 1, 2001, FDUTPA provided that "[in] any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs." *Furmanite,* 506 F.. Supp. 2d at 1145; §501.211(2), Fla. Stat. However, FDUTPA was amended in 2001, and the amendment replaced the word "consumer" with the word "person." The current version of FDUTPA provides that "[in] any action brought by a *person* who has suffered loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs." *Id.;* §501.211(2), Fla. Stat. This amendment demonstrates the clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages, not just injunctive relief. *Id.; See also Advanced Protection Tech, Inc. v. Square D Co.,* 390 F. Supp. 2d 1155, 1164 (M.D. Fla. 2005); *Gritzke v. M.R.A. Holding, LLC,* 2002 U.S. Dist. LEXIS 28085

(N.D. Fla. 2002). "With the deletion of *consumer transaction* from FDUTPA, it would seem that such business entity *consumers* could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services". *Beacon Prop. Mgt., Inc. v. PNR, Inc.,* 890 So.2d 274, 278 (Fla. 4th DCA 2004).

After the amendments to the FDUTPA, courts have opined on several occasions that actions under the statute could be sustained absent the failure to allege that FDUTPA violation arose from a consumer transaction. *See, e.g., Gritzke,* 2002 U.S. Dist. LEXIS at *4 (§501.211(2), as amended, merely requires a person who has been damaged by defendant's violation of the statute); *Niles Audio Corp. v. OEM Systems Co., Inc.,* 174 F. Supp. 2d 1315, 1319-20 (S.D. Fla. 2001) (concluding that legislature's replacement of the word "consumer" with the word "person" was intended to make damages a remedy available to anyone aggrieved by a violation of the statute); *see also Beacon Property,* 890 So.2d at 278 (rejecting the *per se* argument that a judgment was erroneous "simply because the facts at trial do not involve a consumer transaction."). This Court has also recently held that the 2001 amendments allow a plaintiff to seek damages despite a failure to allege that the unfair and deceptive conduct arose from a consumer transaction. *See True Title, Inc. v. Blanchard,* 2006 U.S. Dist. LEXIS 95069, *10 (M.D. Fla. 2006).

Thus, it is clear from the legislative intent of the statute and recent case law in this circuit that the ANA is incorrect when it contends that a FDUTPA claim must allege a consumer transaction and deal with market-based conduct. Accordingly, the ANA's Motion to Dismiss on these grounds should be denied.

### 3. *Plaintiff's request for injunctive relief as well as actual damages plus attorney's fees and court costs is appropriate*

The ANA alleges that a consumer may only recover actual damages for unfair trade practices and that it was inappropriate for Plaintiff to request injunctive relief as well as actual damages plus attorney's fees and court costs. However, Fla. Stat. 501.211(2) specifically provides for attorney's fees and costs by stating: "in any action brought by a person who has suffered a loss as a result of violation of this part, such person may recover actual damages, *plus attorney's fees and court costs* as provided in §501.2105." Fla. Stat. 501.211(2). (emphasis added.) §501.2105 states in pertinent part:

> "In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party." Fla. Stat. §501.2105(1).

Clearly, the legislature intended for a prevailing party in a FDUTPA claim to obtain its reasonable attorney's fees and costs in addition to actual damages.

Finally, it was also proper for Plaintiffs to include a request for injunctive relief due to the fact that the statute specifically provides for injunctive relief. Florida Statute §501.211(1) states:

> "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to *enjoin a person who has violated, is violating, or is otherwise likely to violate this part*." (emphasis added.)

Again, it is clear from the statute that Congress intended for Plaintiffs to obtain injunctive relief as well as actual damages plus attorney's fees and court costs at the Court's

discretion.  Therefore, the ANA's Motion to Dismiss Plaintiffs' FDUTPA claim based on its allegations that Plaintiffs plead its damages incorrectly should be denied.

WHEREFORE Plaintiffs, NATIONAL NUMISMATIC CERTIFICATION, LLC, ASA ACCUGRADE, INC., TREASURE GALLERY, INC., and CENTSLES, INC., respectfully request that this Court enter its Order denying Defendant ANA's Motion to Dismiss and providing such other and further relief as this Court deems just and proper.

DATED this 14th day of April, 2008

        Respectfully Submitted,

        BEUSSE WOLTER SANKS
        MORA & MAIRE, P.A.
        390 North Orange Avenue
        Suite 2500
        Orlando, Florida 32801
        Telephone:   (407) 926-7700
        Facsimile:    (407) 926-7720
        dbrodersen@iplawfl.com
        aneilson@iplawfl.com

By:   /s/ Daniel N. Brodersen
       DANIEL N. BRODERSEN
       Florida Bar No. 0664197
       TERRY M. SANKS
       Florida Bar No.
       AMBER L. NEILSON
       Florida Bar No. 026628

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System this 14th day of April, 2008 which will send an electronic copy of this notice to: Robert E. O'Quinn, Jr., Esquire, COLE, SCOTT & KISSANE, P.A., 1805 Copeland Street, Jacksonville, Florida 32204 (Counsel for the Professional Numismatists Guild, Inc.); Judith M. Mercier, Esquire, HOLLAND & KNIGHT, LLP, 200 South Orange Avenue, Suite 2600, Orlando, Florida and Melina K. Patterson, COOLEY GODWARD KRONISH, LLP, 4401 Eastgage Mall, San Diego, CA 92121 (Counsel for eBay, Inc.); and Zachary A. Leacox, Esquire, FULMER, LeROY, ALBEE, BAUMANN & GLASS, P.L.C., 910 N. Ferncreek Avenue, Orlando, Florida 32803 (Counsel for the American Numismatic Association).

                                            /s/ Daniel N. Brodersen
                                                          Attorney